All right, MCOR v. Great American. Mr. London, please, we'll hear from you. Thank you, Your Honor. Good morning, Your Honors. My name is Bernard London. I'm here representing the appellants, MCOR Group and their subsidiaries. I'm here with my partner, Jim Walsh. The issue in this case is whether the word any has any meaning. To give it more context, this is an insurance policy contract interpretation, and the policy that the appellants had purchased contains the language that the policy will pay for losses sustained during the period of any prior insurance. That's all that this is about. If I were to walk you through the policy, which I'd like to do, you'll see that the insurance company calls it a business pro-crime policy. It provides the insured with coverage for various types of crimes that its employees could manifest against it. One of the categories of coverage that it provides is for employee dishonesty. So if we were to look at, if you were interested in looking at the record, which is at page 350 where the policy is located, for employee dishonesty, the policy provides coverage for what they call a covered property and covered cause. Covered property is money. Covered cause is employee dishonesty. It gets interesting when we turn back a few pages more to the front of the policy, where at paragraph 10 it provides for loss sustained during prior insurance, and then at paragraph 14, an interesting juxtaposition of paragraphs, but at paragraph 14 it says policy period. So it defines the policy period as, I'm just reading from now the record at page 350. The policy period is shown in the declarations, but then it goes on in section B of that policy period section. It says subject to the loss sustained during the prior insurance condition, we will pay. Subject to the loss sustained during the prior insurance condition, well, that's actually closer to the front of the policy. You would think policy period would come first, but no, it comes second. So maybe there's something important about this particular clause. That clause says, which is still at page 350, paragraph 10, it says that if you or your predecessor in interest sustain loss during the policy period of any prior policy, we will pay. Provided that, section 1, this insurance became effective at the time of the cancellation or termination of the prior policy. So what we're dealing with here is the English language. We have pronouns. Do those pronouns mean anything? We have the pronoun any. The pronoun any. Any leaves it pretty open-ended, doesn't it, the insurance? And is it be an unusual thing for an insurance policy to extend coverage open-endedly or back through all time? It's very common in this form of insurance. And because crooks hide their crimes, you don't know when you're going to find the crime that they committed. The policy requires that when you find the crime, you have to report it during the policy period or they give you one year thereafter to report it. But as far as when the crookery, when the crime occurs, you can go back as long as you had continuous coverage. Now, this, I think, is where the district court below may have misunderstood the argument. They thought it meant you had cumulative continuous coverage. You don't. But what you do have is as long as you continue to purchase a new policy every year for crime coverage, if there's a loss that was sustained in a prior policy period, this policy and the various variants of these employee dishonesty policies will look back at those prior policy periods. And as long as you had continuous coverage, you will be provided coverage. So the word any is a pronoun which gives meaning to an indeterminate noun. So insurance could be many or it could be one. Pronouns like this or that. But the provided clause, the other side makes the argument that it says that provided this insurance became effective at the time of cancellation or termination of the prior insurance. And they say, well, only one policy can be terminated. And that's the immediately preexisting policy. And that would be. And then they say upon termination of the prior insurance and they say, well, that refers to one insurance. In other words, that provided clause is written in terms of the singular. And. There's only one policy can be terminated and that can only be one prior insurance. So. Why? Why wouldn't that have? Why is their reading wrong? OK, and I agree with everything you've just said. Their conclusion, their reading is not wrong, but their conclusion is incorrect. Because the way the way these policies work is that this policy, meaning the current policy under which the claim is filed. Must be in effect at the time that the insurance, the prior insurance, and as long as that scheme has been kept. In fact, you go back because it says you also need to assign some weight to the words became effective. And the 2004 policy didn't become effective at the time of the termination of 2002 policy. It became effective only upon the termination of the 2003 policy. So all I'm saying is in this provided clause, you have three different things to explain. One is the use of the term became effective and it only becomes effective upon cancellation of the immediate proceeding policy. And then. The fact that the word terminated is written in the singular, because only one policy is terminated upon the beginning of another. And then they refer to the termination of the prior insurance. Again, written in the singular. So when we when we look at this as a whole. And try to give effect to the whole meaning of it. They're saying aren't there three different hurdles in the provided clause that you need to sort of overcome there? Well, I think there's one, but I hear what you're saying and I don't disagree with you. It's this policy, which is clearly the policy under which the claim is made. That's the first part of that provided clause. The second part is that on expiration of the policy. The policy is the prior policy, but the word V can also be construed as any prior policy. Well, no, that's not true. That rewrites the contract, but it rewrites the contract. If you disregard the word any. What is what is the one's common understanding of the word? Any. Look, I read these policies a lot and they're like they can make your head spin. But, I mean, if you look, for instance, just to show you another some other language. If you look at paragraph 11 of this policy, which does not relate to policies that may have been issued by another company, but to any policies, the string of policies issued by this insurance company, they say that if we look back on prior policies for losses sustained. What do you do with the declarations page here? Because the declarations page uses the term prior insurance to refer to the 2003 policy specifically. So, you know, that's different from the provided clause. But if you've got the provided clause plus the reference in the declarations page to prior insurance referring to the 2003 policy specifically, and we're trying to interpret how this policy as a whole, how can we interpret it in a way that makes sense of that and gives some effect of a language. I'm just these are, you know, these are two commercial entities involved here. And so I'm not sure that the principle of any ambiguity being interpreted in favor of an insurer actually applies with the same kind of force as it would when you're dealing with a situation where one party is not sophisticated or whatever. But I just think there are a number of linguistic, a number of linguistic. It's not entirely clear. But the question is, where does the weight, the balance of the interpretation fall? Right. Well, with respect to your reference to the declaration page, the prior insurance is the specific prior policy to this. The scheme that's envisioned is that you will maintain with every policy that you get a prior insurance that will be identified and it will go back in time. What I was referring to in paragraph 11 is the wording here. It says regardless of the number of years, the insurance remains in force. Where the number of premiums paid, no limit of insurance accumulates from year to year or period to period. The policy is here anticipating that this policy will look back. They don't want you to accumulate. You're only going to get one limit of liability on the policy. They don't want you to accumulate limits of liability. But it clearly in this paragraph is envisioning that this policy does look back to prior years. Additionally, the court below did not want to consider it, but there was a prior claim a year earlier for a different one of their subsidiary companies that had a dishonesty loss. And it was paid. And it was paid because the company, the insurance company, looked back three years and paid the claim. The court didn't want to consider that because that claim was settled. But it was settled on the grounds there was a dispute of how you calculate the claim. There was not any dispute that the insurance company had looked back over a three-year period and paid the losses sustained during each of those adding up each of those three years. Excuse me, Judge Harris. I'm sorry. I'm fine. Judge Harris, I'm sorry. No, I'm good. Okay. So, yeah. Thank you, ma'am. Okay. Thank you, Ron. Oh, I'm sorry. I went over. Mr. Graziano? Good morning, Your Honors. My name is Mike Graziano, and with me at counsel table is Joe Nealon. We represent Great American Insurance Company. The dispute in this case isn't over the word any. The word any, as the court noted, can be open-ended. It can mean one, some, or all. The dispute is over the language which expressly limits the types of policies which can be incorporated by Condition 10 and, therefore, thereby expressly limits the word any and what it means in the context of this particular condition. So your view is that the provided clause conditions any. Exactly. The question in the plain language of the policy is whether this insurance, and everybody agrees this insurance means the 2004 policy, became effective at the time of termination or cancellation of the 2002 policy or the factory mutual policy. And the answer to that question is as plain as can be. On page 345 of the joint appendix, the parties agreed, expressly and in writing, that the 2002 policy was canceled effective December 1, 2003. The 2004 policy, on the same page, became effective on December 1, 2004, a year later. So the 2004 policy quite simply did not become effective at the time of cancellation of the 2002 policy. The same is true with respect to the first policy that was issued by Factory Mutual Insurance Company in 1999, and that can be found on page 142 of the joint appendix. It expired on December 1, 2002, which is two years before the 2004 policy, under which the claim has been made, became effective. What MCOR is asking the Court to do is rewrite the Condition 10 so that it ignores the terms termination and cancellation and pretends that they are meaningless when we refer to the 2002 policy and the factory mutual policy. But the contract, no matter what law is applied, has to be enforced as it's been written. The fact that MCOR is trying to rewrite the contract is most apparent on page 27 of its opening brief, in which it takes the phrase that we've been discussing, this insurance became effective at the time of cancellation or termination of the prior insurance, and in brackets replaces, takes six of those words, deletes them, replaces them with 19 new words, so that it reads, this 2004 policy became effective at the time of cancellation or end in time of all of MCOR's earlier insurance policies within a single unbroken period of time. That's just not what the 2004 policy said. If it did, then perhaps the 2002 policy and factory mutual policy would be incorporated, but they're not. MCOR's only response is that in their brief, in their reply brief, they say that they were just engaging in interpolation, which I found to be an interesting choice of words, because when I looked at the Merriam-Webster Online Dictionary, which is a source that MCOR itself cites in its brief, the definition of interpolation is to alter or correct. Judge Motz said all of this in his opinion. Yes, Judge Hollander addressed all of this in her opinion. Judge Motz considered the second round of summary judgment motions that have not been appealed. Can I ask you a question? You said at the beginning that everyone agrees that this insurance refers to the 2004 policy. Yes, Your Honor. But I thought MCOR was at least in a footnote kind of retaining the argument it had made at the district court that this insurance actually means the series of policies it had with Great American. Isn't that right? I saw that footnote, and I thought that that was the argument. But counsel, I believe, stood up here and told the court that this insurance means the 2004 policy. So I assume that they had withdrawn that argument or were no longer making it. Because just as a matter of common sense, from a lay perspective, I can sort of understand that, right, that you think, well, if someone asks me, you know, when did your car insurance become effective, I think of the first time I took out the policy. And then, yes, I've renewed it every year since then. But, you know, my insurance started when I first took out a policy. And it does say insurance and not policy. So why is that not at least a fair lay understanding that this insurance might refer to the series of policies? I think it's not a fair lay understanding because all you have to do to resolve it is look at page one of the policy, the declarations page, which says the prior insurance and has a specific policy number, which refers to nothing other than the immediately prior policy is canceled as of the effective date. I think that – I don't think it's ambiguous to begin with, but to the extent it is, the declarations page leaves absolutely no room for doubt. And so your argument about the extrinsic evidence, the idea that maybe Great American has construed this differently in different cases, it's not relevant because there's no ambiguity here. Exactly. That's your argument. Okay. And I don't believe that the extrinsic evidence supports the proposition that Great American accepted MCOR's interpretation. But I believe the briefs adequately address that issue as well as the alternative grounds. If the Court has no more questions, I'll yield my time. Anything further? No. Judge Keenan, do you have any questions? No, thank you. Okay. We have no further questions of you. Thank you, Your Honor. May I, Your Honor, very briefly? Yes, please. Come forward. Yes. Thank you. Just to clarify, this insurance, I thought I was specifically referencing your question, but this insurance does refer, in our view, to the series of insurance that they had, but specifically the claim here refers to this specific policy. That's what I thought I was addressing. I would just also like to raise the law that's involved here. There are only three circuit cases, Federal Circuit cases, interpreting this type of an insurance scheme. They've all been cited in the briefs. There's one circuit court case that's referred to by the Kelly's, which is a case called Winthrop and Weinstein, which is a law firm that was defrauded, and that's out of the Eighth Circuit. That court did not address this specific issue, and, in fact, in the case, the court specifically says we do not address the issue of whether the look-back period, how far it goes back. There are two other circuit court cases. There's the Times-Picayune case, which is the Fifth Circuit, which I thought was a somewhat good exploration. The language is different. The scheme is the same. But they do address the fact that on these type of crime policies, you must look back over the period of the fraud. There's another case, the Brigham Young case, and they also address the fact that the natural law principle that applies to what we need to do or don't need to do is an abstract matter. I'm just looking at this particular provision, including the provided clause. Yeah, it says any, but then it says yes, but provided that. Now, I don't think it's wrong to take the word disinsurance to mean the present policy. This insurance right here now became effective. When does it become effective? At the termination of the prior insurance. And it just goes, it seems to me, the phrase just seems to me to trip along from one singular to another. I mean, there's no break in the singular. It just goes from singular to singular to singular to singular. Except it's multiple in the clause that tells you what it's going to provide coverage for. The law sustained during any. But it's conditioned. I mean, that's the any is conditioned. You act as if a provided isn't there. No, I don't act like provided isn't there. There's supposed to be a scheme that you had continuous coverage. It's not in the record. The underwriters of these policies want to know that you did not, as an insured, go bare. You did not have a period of time that you didn't have coverage. Because maybe then you find out that there was a loss, so then you buy coverage. The question is whether the scheme that you say that they're supposed to be is reflected in the text. I mean, that's the whole question. And I understand what you wish it to be and the scheme you would like it to be. I mean, the whole question is not what we think the scheme should be. It's just what's reflected here in the text. But what's reflected in the text, at best, is an ambiguity. Then there ought to be a trial and resolve that ambiguity. Because, as you point out, which I don't necessarily agree with, because I think ambiguities under Connecticut law, if we were to get into that, would be resolved, even with a big commercial insured, would be resolved against the draft of the policy of the insurance company. But even presuming that it doesn't get resolved against the draft of the insurance policy, nonetheless, if there's an ambiguity, you have to have a finding of fact on that. I know, but that presupposes that there's an ambiguity. It's sort of based on the central question. That's a big question here. Is there an ambiguity? I think there's not. You, I believe, Judge, with all due respect, I think there may be. All right. Thank you. Thank you. All right. We will come down and greet counsel, and then we'll proceed directly into our final case.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Pamela A. Harris